## THE VIJAX NO. 2.

## THE VIJAX NO. 224.

## VIJAX COAL CO. v. CITY OF NEW YORK et al.

## M. & J. TRACY, Inc., v. SAME.

### Nos. 15438, 15511.

District Court, E. D. New York.

April 13, 1939.

Purdy, Mason & Lamb, of New York City (Gerard M. McAllister, of New York City, of counsel), for libellant Vijax Coal Co.

Henry W. Baird, of New York City (Charles F. Welch, of New York City, of counsel), for libellant M. & J. Tracy, Inc.

William C. Chanler, Corp. Counsel, of New York City (Willard M. L. Robinson, of New York City, of counsel), for respondent City of New York.

Macklin, Brown, Lenahan & Speer, of New York City (Gerald J. McKernan, of New York City, of counsel), for respondent Reading Co.

ABRUZZO, District Judge.

The libellants instituted actions against the respondents to recover damages to its respective barges "Vijax No. 2" and "No. 224". Pursuant to stipulation both cases were tried together. The libellants, at the beginning of the trial, withdrew their claims against the Reading Company. Thus, the only remaining respondent was the City of New York.

On April 13, 1938, the Reading Company's tug "Ashbourne" left Port Reading, New Jersey, towing on a hawser the two loaded coal barges "Vijax No. 2" and the "No. 224" side by side. The tow was bound for New York and proceeded up the Kills. Near the entrance to the Kills and about half way between Robbins Reef Buoy and the ferry slips at St. George, Staten Island, the captain of the "Ashbourne" observed the New York City ferryboat "Miss New York" coming down the bay on a trip to Staten Island. The tow at that time was making approximately three or four miles per hour and an alarm signal was blown by the tow.

No reply was received and the "Ashbourne" blew another alarm signal. In view of the fact that the ferryboat did not slow down, a third alarm signal was blown.

The "Miss New York" continued down and passed the "Ashbourne" and her tow, starboard to starboard. The ferryboat threw heavy swells which caused the barges to jump around and strike each other, resulting in the damage complained of. The swells were caused by the excessive speed of the "Miss New York" under the existing conditions.

These facts were clearly testified to by the many witnesses called by the libellants.

The respondent City of New York had no witnesses who directly contradicted the testimony of the libellants. The theory of the defense was that nothing unforeseen or unusual had occurred, that the "Miss New York" made an ordinary trip, and that the respondent knew nothing of any damages to the libellants' barges, caused by excessive swells.

The direct sworn testimony of the libellants' witnesses outweighs this defense.

The respondent City of New York seems to lay great stress on a statement made by the witness Canfield, captain of the "Vijax No. 2", called by the libellants, in which his theory of the cause of the damage differed from his testimony. The argument is advanced that if his statement were true, the respondent City of New York could not be liable for the damage to the libellants' barges. Canfield satisfactorily explained the manner of making this statement and how the error had been made.

Apart from this witness' testimony, the sworn uncontradicted testimony of the others called by the libellants justifies a decree for the libellants. Their testimony

160

furnished a sufficient basis for the finding that the respondent City of New York is liable for the damage caused to the two barges, "Vijax No. 2" and "No. 224".

Therefore, a decree should be entered in favor of the libellants and against the City of New York.